# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:17-cr-53 |
| v. ) | |
| ) | Judge Travis R. McDonough |
| DOUGLAS DYER ) | |
| ) | |
| ) | |

# ORDER

Before the Court is Defendant's motion for compassionate release (Doc. 117) and supplements (Docs. 118, 121, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133). During the COVID-19 pandemic, the federal Bureau of Prisons ("BOP") released Defendant to home confinement. Defendant now maintains that his term of home confinement is too restrictive to care for his ailing mother and brother, and that compassionate release from home confinement is warranted.

A sentencing court may "modify a term of imprisonment once it has been imposed," after considering the applicable factors set forth in 18 U.S.C. § 3553(a), if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that "federal judges" have "full discretion to define 'extraordinary and compelling'" without reference to U.S. Sentencing Commission policy statement § 1B1.13); *United States v. Ruffin*, 978 F.3d 1000, 1008 (6th Cir. 2020) ("We have recognized that some of the § 3553(a) factors, including the 'need to provide just punishment' and 'to reflect the seriousness of the offense,' allow courts to consider the 'amount of time' that a defendant has served on a sentence when deciding whether to grant a

sentence reduction."). Before seeking a sentence reduction from the court, the defendant must exhaust administrative remedies by fully pursuing "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (holding that "this exhaustion requirement . . . is mandatory (there is no exception)").

Defendant did not seek compassionate release from BOP, but the Government has declined to assert the exhaustion requirement. (Doc. 120, at 3.) Defendant asserts that his mother and brother are in continually worsening medical condition, and that he cannot see them regularly enough while on home confinement to care for them to the extent needed. (Docs. 117, 118, 121, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133.) Even assuming that the caregiving needs of his mother and brother are extraordinary and compelling, the Court cannot conclude that the § 3553(a) factors support release.

In 2017, Defendant pled guilty to conspiracy to commit wire fraud and mail fraud, in violation of 18 U.S.C. § 371; tax evasion, in violation of 26 U.S.C. § 7201; and criminal contempt, in violation of 18 U.S.C. 401(3). (Doc. 9.) The plea agreement reflects that between 2008 and 2016, Defendant Dyer and his co-defendant Brennan created a limited liability company ("LLC") with the stated goal of creating eight other LLCs, and induced others to invest in them by stating that they would register those eight LLCs for public trade and use them to conduct reverse mergers. (*Id.* at 3.) Instead, Dyer and Brennan diverted a significant portion of the invested funds to purchase personal items. (*Id.* at 3–4.) They never registered the LLCs for public trade and did not conduct reverse mergers, but did issue stock certificates creating the perception that they had handled the funds as they said they would. (*Id.* at 4.) Dyer and Brennan

2

also committed tax evasion by reporting the embezzled funds as long-term capital gains, treating payments from the original LLC as non-taxable distributions, and mischaracterizing the embezzled funds as carried interest. (*Id.* at 5–6.) Finally, after the Securities and Exchange Commission filed a civil suit against Defendant, this Court enjoined him from transferring assets, but he did so in contempt of the Court's order. (Doc. 28, at 1[1]); *see also Sec. & Exch. Comm'n v. Brennan, et al.*, Case No. 1:16-cv-307 (E.D. Tenn.).

At sentencing, the presentence investigation report ("PSR") held Defendant responsible for causing approximately $4.9 million in loss and harming approximately 200 victims. (Doc. 43, at 8.) It calculated a total offense level of 25 with a criminal history category of I, for a guideline imprisonment range of 57 to 71 months. (*Id.* at 13.) Though Defendant objected to various aspects of the PSR and sought a downward variance, the Court overruled his objections, denied his motion for a variance, and sentenced him to a within-guidelines sentence of 60 months' imprisonment.[2] (Doc. 59.) Defendant appealed, and the Sixth Circuit affirmed. *United States v. Dyer*, 908 F.3d 995 (6th Cir. 2018). In June 2020, BOP transferred Defendant to home confinement under the CARES Act for the remainder of his term of incarceration. (Doc. 120-1.) According to BOP, he is due to be released from home confinement (and begin a three-year term of supervised release (*see* Doc. 59)) on March 4, 2022. *Find an Inmate*, Federal Bureau of Prisons (last visited July 14, 2021), https://www.bop.gov/inmateloc/.

In weighing the § 3553(a) factors at sentencing, the Court observed that Defendant (despite having no criminal history) had previously been fined and suspended for unethical

---

[1] This document is an agreed supplement to the factual basis contained in the plea agreement.

[2] This consisted of 60 months on Count One and Count Three (which each had a statutory maximum of 60 months' imprisonment), and three months on Count Four (which had a statutory maximum of six months' imprisonment), all to run concurrently.

trading practices, essentially stole $4.9 million over a period of many years by manipulating those who trusted him, used the stolen money to fund a lavish lifestyle, stopped only when the Securities and Exchange Commission forced him to, used his perceived generosity and caring to help execute the scheme, and committed charitable acts during the course of the scheme because it left him with significant free time and other people's money to do so. (*See generally* Doc. 72, at 71–85.) The Court also considered Defendant's health and his caretaking role with respect to his brother. (*See id.* at 75.) Importantly, the Court concluded that in "the situation before [it] where the defendants were intimately involved in virtually every aspect of the crime," and "directly received the proceeds of the fraud and the profit margins were very high" despite some costs, the guideline range is "more helpful than" cases where the defendant played a minor role in the scheme. (*Id.* at 79.) Thus, the Court concluded, "a guidelines sentence would appropriately avoid unwarranted sentencing disparities." (*Id.*) Moreover, because Defendant appeared unlikely to meaningfully disgorge his ill-gotten gains or pay full restitution, the Court observed that a within-guidelines sentence would appropriately reflect the severity of the crime and deter future criminal conduct. (*Id.* at 80; *see also id.* at 83 (observing that "an unreasonably lenient sentence could send the wrong message to those [in the investment and financial-services industry] who might be considering similar actions and schemes").) Finally, the Court rejected Defendant's argument that his sentence should be less severe because his crime was non-violent given that he "made a calm, calculated, corrupt decision to continue this scheme for years, to keep up the facade of success, the facade of respectability, and to lure more and more victims into [his] trap." (*Id.* at 80–81.)

The Court crafted Defendant's sentence with the firm conviction that the § 3553(a) factors required a within-guidelines sentence. Even considering Defendant's argument that he is

now rehabilitated and that his brother's and his mother's conditions have worsened, the Court remains convinced that Defendant's crime was serious and warranted a serious term of incarceration. He has served approximately 43 months of the 60-month sentence the Court imposed (in any case, with good-time credit, Defendant will ultimately serve less than sixty months), and is now on home confinement under the CARES Act. (Doc. 120-2, at 2.) But the § 3553(a) factors simply do not support terminating the remainder of his custodial sentence. Accordingly, Defendant's motion (Doc. 117) is **DENIED**.

    **SO ORDERED.**

                                                /s/*Travis R. McDonough*
                                                **TRAVIS R. MCDONOUGH**
                                                **UNITED STATES DISTRICT JUDGE**